UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
───────────────────────────────
UNITED STATES OF AMERICA,

                -against-

YEKATERINA KLEYDMAN,

                           Defendant.
───────────────────────────────

**MEMORANDUM & ORDER**
**18-CR-310 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Defendant Yekaterina Kleydman, a dermatologist, is charged with one count of health care fraud in violation of 18 U.S.C. § 1347 and three counts of submitting false claims in violation of 18 U.S.C. § 287. (*See* Indictment (Dkt. 1).) Specifically, she is accused of enriching herself by knowingly submitting false and fraudulent claims to government health care benefit programs including Medicare and Medicaid. (*Id.*) Now before the court are various pretrial motions filed by Dr. Kleydman, to wit: (1) a motion to dismiss the indictment for vagueness (Mot. to Dismiss the Indictment for Vagueness ("Vagueness Mot.") (Dkt. 35); Reply to Opp. ("Vagueness Reply") (Dkt. 42)); (2) a motion to dismiss the indictment for violation of due process (Mot. to Dismiss the Indictment for Violation of Due Process Right to Present a Defense ("Due Process Mot.") (Dkt. 37); Reply to Opp. ("Due Process Reply") (Dkt. 43)); (3) a motion for a bill of particulars, prompt disclosure of *Brady* materials, and early disclosure of the Government's witness and exhibit lists (Mot. for a Bill of Particulars ("Particulars Mot.") (Dkt. 34); Reply to Opp. ("Particulars Reply") (Dkt. 40)); and (4) a motion to strike language from the indictment (Mot. to Strike Surplusage ("Strike Mot.") (Dkt. 38); Reply to Opp. ("Strike Reply") (Dkt. 41)). The Government opposes all of Dr. Kleydman's motions. (*See* Mem. in Opp. ("Opp.") (Dkt. 39).) For the following reasons, Dr. Kleydman's motions are DENIED.

1

I. **BACKGROUND**

Defendant Yekaterina Kleydman is a dermatologist who, at all relevant times, owned and operated Kleydman Dermatology PLLC, a medical practice in Brooklyn, New York. (Indictment ¶ 13.) Beginning in at least 2013, Dr. Kleydman was enrolled as an individual practitioner with the Medicare Program ("Medicare") and the New York State Medicaid Program ("Medicaid"). (*Id.*) As a Medicare and Medicaid enrollee, Dr. Kleydman could submit reimbursement claims to Medicare and Medicaid for services rendered to patients so long as those services were "medically necessary." (*Id.* ¶ 8.) To identify reimbursable procedures, health care providers such as Dr. Kleydman submit claims to Medicare and Medicaid using billing codes, also called current procedural terminology ("CPT") codes, which specifically identify the medical services provided to patients. (*Id.* ¶¶ 10, 12.)

The charges in this case stem from Dr. Kleydman's treatment of Seborrheic Keratosis ("SK"), one of the most common noncancerous skin growths in older adults, and skin tags, which are small, soft, benign growths. (*Id.* ¶ 11 n.1.) According to the indictment, Medicare and Medicaid cover costs related to the removal of SKs and skin tags "if the skin growths [are] inflamed and irritated." (*Id.* ¶ 11.) However, Medicare and Medicaid consider the removal of "non-inflamed and non-irritated" SKs and skin tags "to be a cosmetic procedure" and therefore do not cover costs related to such procedures. (*Id.*) The Government alleges that Dr. Kleydman schemed to defraud Medicare and Medicaid by submitting claims for the purported removal of inflamed and irritated SKs and skin tags when, in fact, she was removing standard SKs or skin tags, for which Medicare and Medicaid would have otherwise provided nothing or far less reimbursement. (*Id.* ¶ 14; *see also* Opp. at 1-3.) The Government further alleges that Dr. Kleydman prepared false medical documents in furtherance of this scheme, including but not limited to medical records that

falsely described certain patients' SKs and skin tags as inflamed and irritated. (Indictment ¶ 15.)

On June 18, 2018, the grand jury returned an indictment charging Dr. Kleydman with one count of health care fraud in violation of 18 U.S.C. § 1347 and three counts of false claims in violation of 18 U.S.C. § 287. (*Id.* ¶¶ 17-20.) Count One alleges that between January 2015 and March 2018, Dr. Kleydman, along with others, executed and attempted to execute a scheme and artifice to defraud Medicare and Medicaid. (*Id.* ¶¶ 17-18.) Counts Two, Three, and Four allege that particular claims—each identified by date of service, claim number, CPT code billed, amount billed, and amount paid—were false, fictitious, and fraudulent. (*Id.* ¶¶ 19-20.)

## II. LEGAL STANDARD

Federal Rule of Criminal Procedure 7(c)(1) requires, *inter alia*, that an indictment contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). An indictment satisfies Rule 7(c)(1) if it "first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013);[1] *see also United States v. Lee*, 833 F.3d 56, 67-68 (2d Cir. 2016) (stating that an indictment's failure to allege an element of the charged offense is a constitutional violation).

To meet this standard, indictments typically "need do little more than to track the language of the statute charged and state the approximate time and place of the alleged crime." *United States*

---

[1] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted and all alterations are adopted.

3

*v. Vilar*, 729 F.3d 62, 80 (2d Cir. 2013). Indictments generally do not "have to specify evidence or details of how the offense was committed." *United States v. Wey*, No. 15-cr-611 (AJN), 2017 WL 237651, at *5 (S.D.N.Y. Jan. 18, 2017). Moreover, "[w]hen considering a motion to dismiss, the [c]ourt must treat the indictment's allegations as true." *Id*.

That said, there are "very rare cases in which an indictment that track[s] the statutory language and furnishe[s] the pertinent dates" is constitutionally insufficient. *Stringer*, 730 F.3d at 125. This is because "for certain statutes[,] specification of how a particular element of a criminal charge will be met (as opposed to categorical recitation of the element) is of such importance to the fairness of the proceeding that it must be spelled out in the indictment." *Id.* at 126; *see Hamling v. United States*, 418 U.S. 87, 118 (1974) ("Where guilt depends so crucially upon [ ] a specific identification of fact ... an indictment must do more than simply repeat the language of the criminal statute."); *cf. Russell v. United States*, 369 U.S. 749, 764-72 (1962) (the seminal case setting forth a heightened pleading standard for criminal statutes with generic terms). Offenses that require specificity tend to be ones with a generic statutory definition. *See Stringer*, 730 F.3d at 126-27 (collecting cases). However, "[t]he dismissal of an indictment is an extraordinary remedy reserved only for extremely limited circumstances implicating fundamental rights." *United States v. De La Pava*, 268 F.3d 157, 165 (2d Cir. 2001).

### III. DISCUSSION

#### A. Motion to Dismiss for Vagueness

##### 1. Law

"The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory

4

enforcement." *United States v. Halloran*, 821 F.3d 321, 337 (2d Cir. 2016). "The doctrine addresses concerns about (1) fair notice and (2) arbitrary and discriminatory prosecutions." *Id.* Under the "fair notice prong, a court must determine whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Id.* at 321. In evaluating an as-applied vagueness challenge, "[t]he test is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Arriaga v. Mukasey*, 521 F.3d 219, 224 (2d Cir. 2008).

In general, a defendant "must wait to bring an as-applied vagueness challenge until the facts have been established by evidence introduced at trial and the fact-finder has had an opportunity to weigh in." *United States v. Raniere*, 384 F. Supp. 3d 282, 320 (E.D.N.Y. 2019); *see also United States v. Avenatti*, 432 F. Supp. 3d 354, 366 (S.D.N.Y. 2020) ("[R]esolution of a defendant's void for vagueness challenge ordinarily requires a more expansive factual record to be developed at trial.").

2. Application

Dr. Kleydman does not dispute that the health care fraud statute is "clear on its face." *United States v. Sachakov*, 812 F. Supp. 2d 198, 212 (E.D.N.Y. 2011). Instead, Dr. Kleydman brings an as-applied vagueness challenge, arguing that the health care statute "does not provide fair warning to the defendant that seeking reimbursement for the destruction of a lesion which clinically appears normal but contains microscopic evidence of inflammation would be subject to criminal prosecution." (Vagueness Mot. at 4.) In particular, Dr. Kleydman argues that the Government cannot establish the required falsity under the statute because an inflamed or irritated SK or skin tag "may be indistinguishable [] to the naked eye" to a regular SK or skin tag. (Vagueness Reply at 3; *see also id.* at 2 ("How can a specific claim be false and/or

5

be known as false if [it's] uncontradicted that lesions, including SKs and skin tags, lacking any clinically objective, observable features to the . . . physician, are nevertheless reasonable and necessary to remove?").)

Dr. Kleydman's motion lacks merit. To begin with, Dr. Kleydman has not demonstrated why her as-applied challenge is not premature in the absence of "a more expansive factual record to be developed at trial." *Avenatti*, 432 F. Supp. 3d at 366. To the contrary, the fact-intensive nature of this case counsels strongly against dismissal at such an early stage. Furthermore, evaluating § 1347 as applied and taking the allegations in the indictment as true, as the court must at this stage, a scheme to defraud Medicare and Medicaid by submitting claims for reimbursement asserting one procedure was performed (*e.g.* removal of an inflamed SK) when, in fact, a different procedure was performed (*e.g.* removal of a non-inflamed SK), would plainly defraud the United States and satisfies the fair notice requirement. *See Sachakov*, 812 F. Supp. 2d 198 ("The health care fraud statute provides sufficient notice to alert ordinary people as to what conduct is prohibited"); *see also United States v. Tairod Nathan Webster Pugh*, No. 15-cr-116 (NGG), 2015 WL 9450598, at *16 (E.D.N.Y. Dec. 21, 2015) ("[O]n a pre-trial motion to dismiss an indictment, the court must assume the prosecution's allegations will be proven at trial and draw all reasonable inferences from those allegations. The court then asks whether any jury could convict.").

Dr. Kleydman strenuously argues that this is an impermissible prosecution based on "stealth facts." (Vagueness Mot. at 7.) In particular, Dr. Kleydman argues that the Government cannot prove the "falsity" of her claims because a skin lesion with no observable indications of inflammation can still be inflamed on a

microscopic level. However, while that may prove to be a compelling argument, those contentions raise questions of fact[2] that are more appropriately addressed at trial and constitute insufficient bases to dismiss the indictment.

Dr. Kleydman's argument that this case is a "far cry from the prototypical health care fraud cases" is similarly unconvincing. (Vagueness Mot. at 7.) For instance, in *United States v. Janati*, 237 F. App'x 843, 845 (4th Cir. 2007), the defendants, who ran a neurology practice, were indicted for repeatedly "represent[ing] that an office visit was more involved or complex than it actually was" to justify a higher billing rate. *Janati*, 237 F. App'x at 845. Similarly, here, the indictment asserts that Dr. Kleydman upcoded certain treatments to justify an increased reimbursement rate. The distinctions that Dr. Kleydman seeks to draw between this case and *Janati*—that the defendants in *Janati* always billed an office visit at the highest code, altered their standard billing forms to effectuate the scheme, and continued the scheme even after being told by Medicare representatives that their conduct was improper whereas Dr. Kleydman did not always perform the charged procedure, did not alter billing forms, and was never warned by Medicare—are factual distinctions that may well influence the jury's decision, but which do not render the indictment legally flawed such that it must be dismissed.

Accordingly, the court denies Dr. Kleydman's motion to dismiss the indictment for vagueness without prejudice.

---

[2] In fact, at oral argument, the Government disputed Dr. Kleydman's representation of the pathology issues, and represented that it would call an expert witness to testify accordingly.

### B. Motion to Dismiss for Due Process Violation

1. Facts

Dr. Kleydman argues that Government agents intimidated certain relevant witnesses into refusing to speak with her investigators. In support of these allegations, Dr. Kleydman submitted an affidavit of her husband, Roman Gur. (*See* Aff. of Roman Gur ("Aff.") (Dkt. 37-2).)

First, Dr. Kleydman alleges that Sirush Abraamyan, a former medical assistant at Kleydman Dermatology, was intimidated by the Government. Dr. Kleydman asserts that Abraamyan said that she had been approached by Government investigators who "told her that she would be charged as a co-conspirator" and that "there would be repercussions to her medical career and possible deportation" if she failed to cooperate. (Due Process Mot. at 2.) Ms. Abraamyan allegedly further said that she was "extremely frightened" for herself and her family. (*Id.*) As a result, Ms. Abraamyan reneged on her initial agreement to speak with Dr. Kleydman's investigator, stating, "I'm not allowed to answer any questions." (*Id.* at 4-5.)

Second, Dr. Kleydman alleges that Rebekka Plotinskaya, a former employee of Kleydman Dermatology, was intimidated by Government investigators. Dr. Kleydman asserts that Government investigators visiting Plotinskaya's home screamed her name in a loud voice, and told her "you're playing games, and this is going to end badly for you." (*Id.* at 7.) The investigators allegedly also told Plotinskaya that "this would be her last chance to talk to them and if she refused to talk to them, they would go to the prosecutor." (*Id.*)

Third, Dr. Kleydman alleges that Violet Ostarkhova, a former desk manager at Kleydman Dermatology, was intimidated by Government investigators. Dr. Kleydman alleges that Ostarkhova agreed to speak with Dr. Kleydman's investigator at her home

8

until an unknown male, also in the home, told Defendant's investigator that Ostarkhova "has nothing to do" with Defendant and would not answer any questions. (*Id.* at 8.) When Dr. Kleydman's investigator asked Ms. Ostarkhova if she had spoken to federal investigators, the unknown male "replied in a very stern tone, 'no comment.'" (*Id.*)

Fourth, Dr. Kleydman alleges that three other former Kleydman Dermatology employees—Rano Emazarova, Valerie Shevehenko, and Stella Royz—have not responded to inquiries from her investigators.

For its part, the Government disputes any allegations of intimidation or threats, and represents that it has "reviewed the allegations and did not find any support for the claims." (Opp. at 18.)

### 2. Law

"Under certain circumstances, intimidation or threats that dissuade a potential defense witness from testifying may infringe a defendant's due process." *United States v. Pinto*, 850 F.2d 927, 932 (2d Cir. 1988). "To demonstrate a due process violation based on the government's intimidation of witnesses, the defendant must show . . . .: (1) that he was deprived of material and exculpatory evidence that could not be reasonably obtained by other means, (2) bad faith on the part of the government, and (3) that the absence of fundamental fairness infected the trial." *United States v. Lebedev*, 932 F.3d 40, 55 (2d Cir. 2019).

### 3. Application

Dr. Kleydman's due process claim fails. First, the motion is premature, as Dr. Kleydman is unable to demonstrate that "the absence of fundamental fairness infected the trial" before the trial

9

has even taken place.[3] Second, Dr. Kleydman's motion rests solely on an affidavit submitted by her husband, purporting to relay facts about each of Dr. Kleydman's medical assistants whom she alleges were intimidated by the Government. Dr. Kleydman has not submitted a single affidavit from *any* of the actual witnesses themselves.[4] Third, even taking as true the contents of Dr. Kleydman's husband's affidavit, Dr. Kleydman still fails to establish the first two prongs outlined in *Lebedev*. Dr. Kleydman does not explain, beyond conclusory assertions supported only by her

---

[3] Dr. Kleydman argues that "*Lebedev* says nothing about when abusive government conduct infects a trial because the [c]ourt never reached that issue." (Due Process Reply at 2.) That is true enough; though, of course, the Second Circuit in *Lebedev* was reviewing the defendant's due process motion on a post-trial basis, and Dr. Kleydman presents no authority to the contrary. And, the fact remains that nothing in Dr. Kleydman's papers, including her husband's affidavit, establishes that the "absence of fundamental fairness" would infect the trial. *Lebedev*, 932 F.3d at 55.

[4] Dr. Kleydman takes issue with the Government's hearsay objection to her husband's affidavit, arguing that "Second Circuit precedent routinely rel[ies] on affidavits of third parties to review witness tampering claims." (Due Process Reply at 2.) In support of this argument, Dr. Kleydman cites to a criminal case, *United States v. Williams*, 205 F.3d 23 (2000) and a civil case, *Hamilton v. City of New York*, No. 15-cv-4574 (CBA), 2019 WL 1452013 (E.D.N.Y. March 19, 2019). (Due Process Reply at 2.) Those cases are inapposite. In *Williams*, the court relied on an affidavit submitted by the defendant's counsel of a conversation counsel had with the witness whom the defendant claimed had been intimidated. *Williams*, 205 F.3d at 25. Dr. Kleydman tries to analogize to *Hamilton* by noting that the court there "rel[ied] on [an] affidavit of [a] wife whose husband claimed to have been threatened by police." (Due Process Reply at 2.) *Hamilton*, however, involved a civil defendant's motion for summary judgment, and the court relied in part on an individual's affidavit in the context of denying the defendant's motion, finding that a witnesses' version of events was credible enough to allow for a particular fact to reach the jury. *Hamilton*, 2019 WL 1452013, at *17. In any event, regardless of the question of hearsay, the fact that all of Dr. Kleydman's allegations rest entirely on her husband's affidavit is directly relevant to the reliability of the information and the weight the court gives it in assessing very serious allegations of witness intimidation.

husband's affidavit, how she was deprived of material or exculpatory evidence or how the Government acted in bad faith. And, fundamentally, while Dr. Kleydman's papers assume that she has already been unable to call these medical assistant witnesses, that is of course not the case, as this case does not even have a trial date set. To the contrary, it is possible that these witnesses may ultimately choose to testify, thereby contradicting Dr. Kleydman's speculative assertions of infectious unfairness.

Accordingly, Dr. Kleydman's due process motion is denied. However, as the court explained at oral argument, the court takes allegations of governmental misconduct very seriously. Therefore, the court's denial of Dr. Kleydman's motion is without prejudice for her to renew the motion should new evidence become available.

### C. Motion for Bill of Particulars

#### 1. Law

Federal district courts have authority to "direct the government to file a bill of particulars." Fed. R. Crim. P. 7(f). The district court has broad discretion in deciding whether to grant a motion for a bill of particulars, *see United States v. Panza*, 750 F.2d 1141, 1148, (2d Cir. 1984), and courts are only required to grant a bill of particulars "where the charges of the indictment are so general that they do not advise the defendant to the specific acts of which he is accused." *United States v. Chen*, 378 F.3d 151, 163 (2d. Cir 2004). The standard turns on "whether the information sought is necessary, not whether it is helpful." *United States v. Facciolo*, 753 F. Supp. 449, 451 (S.D.N.Y. 1990). In making this determination, "the court must examine the totality of the information already available to the defendant—through the indictment, affirmations, and general pre-trial discovery." *United States v. Bin Laden*, 92 F. Supp. 2d 225, 233 (S.D.N.Y. 2000); *see also United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (per curiam) ("Generally, if the information sought by [the] defendant

is provided in the indictment or in some acceptable alternate form, no bill of particulars is required."). The defendant bears the burden of showing that "the information sought is necessary" and that he will be prejudiced without it. *United States v. Fruchter*, 104 F. Supp. 2d 289, 312 (S.D.N.Y.).

### 2. Application

Dr. Kleydman requests that the Government be required to file a bill of particulars providing:

1) The specific acts committed by the Defendant that constitute her dishonest acts involving the submission of medically unnecessary claims during the three year period charged in Count I of the indictment;
2) Each material misrepresentation or omission allegedly made by the Defendant with respect to the submission of medically unnecessary claims; and
3) The identity of any third party who is criminally responsible for the commission of the offense.

(Particulars Mot. at 3-4.)

In support of her request, Dr. Kleydman relies on *United States v. Nachamie*, 91 F. Supp. 2d 565 (S.D.N.Y. 2000), in which the court granted in substantial part the defendant's motion for a bill of particulars in a health care fraud prosecution. In that case, however, while the Government provided significant discovery relating to 2,000 Medicare claims, none of the claims were "identified by defendant, type of falsity, claim number and date." *Nachamie*, 91 F. Supp. 2d at 571. Here, by contrast, the indictment identifies the false claims comprising Counts 2-4 by date of service, beneficiary, insurance provider, claim number, CPT code, amount billed, and amount paid. (Indictment ¶ 20.) In addition, the Government has identified the type of false claim comprising the scheme in Count 1, *i.e.* that Dr. Kleydman "submitted claims for the removal and destruction of inflamed and

irritated seborrheic keratosis and skin tags when, in fact, the seborrheic keratosis and skin tags were not inflamed and were not irritated." (*Id.* ¶14.) Finally, the Government explained in its opposition that "[t]o the extent [Dr. Kleydman's] [m]otion seeks clarifications regarding diagnosis codes for the relevant CPT codes at issue (17110 and 17111), the government clarifies that it intends to introduce evidence in its case-in-chief regarding alleged diagnoses of inflamed seborrheic keratosis treated with liquid nitrogen (cryotherapy)." (Opp. at 7-8.) In light of these disclosures, Dr. Kleydman has not demonstrated that a bill of particulars is "necessary" as opposed to merely "helpful." *Facciolo*, 753 F. Supp. at 451.

As with her vagueness challenge, Dr. Kleydman's arguments in favor of a bill of particulars rest on alleged inconsistencies in the Government's case. For instance, Dr. Kleydman argues that the indictment is unclear because it charges that she submitted $1.8 million in false claims to Medicare in the relevant three-year period when, in fact, that loss total includes 1,300 procedures spanning nine diagnoses not relevant to the indictment. (*See* Particulars Mot. at 7; Decl. of Jonathan Rosen ("Rosen Decl.") (Dkt. 34-2) ¶ 3.) She also argues the Indictment is not clear because it charges that she submitted false claims for the removal of both SKs and skin tags even though the discovery produced thus far "omits a single instance of a procedure involving an inflamed skin tag." (Particulars Mot. at 7.) While these arguments, like those Dr. Kleydman has already marshalled in support of her vagueness challenge, may prove fatal to the Government's case before the jury, they do not reflect a deficiency in the charging instrument that renders a bill of particulars necessary.

Finally, the court denies Dr. Kleydman's request to identify any unindicted co-conspirators and other actors involved in the alleged criminal conduct. *See United States v. Nejad*, No. 18-cr-224 (AJN), 2019 WK 6702361, at *17 (S.D.N.Y. Dec. 6, 2019)

13

("Courts in this Circuit frequently exercise their discretion to deny requests to identify co-conspirators through a bill of particulars . . . [especially] where, as here, the allegations in the indictment are specific and the Government has provided discovery that will enable a defendant to adequately prepare his defense."); *see also United States v. Mahaffy*, 446 F. Supp. 2d 115, 120 (E.D.N.Y. 2006) (collecting cases).

Accordingly, Dr. Kleydman's motion for a bill of particulars is denied.

### D. Motion for *Brady* Material and Exhibit/Witness Lists

#### 1. Law

Under *Brady* and its progeny, the Government has a constitutional duty "to disclose favorable evidence to the accused where such evidence is material either to guilt or to punishment." *United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001). *Brady* "is not a discovery rule, but a rule of fairness and minimum prosecutorial obligation," *United States v. Maniktala*, 934 F.2d 25, 28 (2d Cir. 1991), and the purpose of *Brady* "is not to provide the defendant with complete disclosure of all evidence in the government's file which might conceivably assist him in the preparation of his defense, but to assure that he will not be denied access to exculpatory information known to the government but unknown to him." *United States v. Ruggiero*, 472 F.2d 599 (2d Cir. 1973). Accordingly, a prosecutor has a duty to learn of any favorable evidence known to those acting on the government's behalf in the investigation or prosecution of the case. "The courts of this Circuit repeatedly have denied pretrial requests for discovery pursuant to *Brady* where the Government has made [] good faith representations" regarding its *Brady* obligations. *Raniere*, 384 F. Supp. 3d at 325.

2. Application

Dr. Kleydman moves for prompt disclosure of *Brady* material as well as the Government's exhibit and witness lists. Specifically, Dr. Kleydman requests any evidence tending to demonstrate: (1) that she engaged in any of the alleged fraudulent acts to treat a client's bona fide medical needs; (2) that Government investigators threatened Government witnesses in an attempt to obtain their cooperation and prevent them from speaking with the defense; and (3) that Government investigators and witnesses were biased against her and/or biased in favor of the Government. In addition, Dr. Kleydman moves the Court to order the Government to provide an exhibit list 60 days before trial and to provide "early disclosure" of the Government's expected witnesses.

Dr. Kleydman does not allege that the Government has violated its *Brady* obligations, but instead argues that the Government has shown a "lack of responsiveness" with respect to producing exculpatory evidence in this case. As Dr. Kleydman acknowledges, however, *Brady* does not mandate that exculpatory evidence be turned over to the defendant at a specific time before trial, so long as it is "disclosed in time for its effective use at trial." *Coppa*, 267 F.3d at 135. And Government has represented—both in its papers and again at oral argument—that it takes its disclosure obligations seriously and is complying with those obligations. (Opp. at 9.) In light of that representation, and the fact that no trial date has been set, the court denies Dr. Kleydman's motion for *Brady* material. The court also denies at this juncture Dr. Kleydman's request that the Government produce its witness and exhibit lists 60 days before trial; once a trial date has been established, the court will set a pre-trial motion schedule.

Though the court denies Dr. Kleydman's *Brady* motion at this juncture, it is important to emphasize the importance of the Government's *Brady* and related disclosure obligations. Accordingly, the court will issue an Order pursuant to Federal Rule of Criminal

Procedure 5(f) that reiterates the Government's continuing disclosure obligation under *Brady* and its progeny.

### E. Motion to Strike Surplusage

#### 1. Law

Rule 7(d) of the Federal Rules of Criminal Procedure allows a court to "strike surplusage from the indictment" upon a defendant's motion. Fed. R. Crim. P. 7(d). "Motions to strike surplusage from an indictment will be granted only where the challenged allegations are not relevant to the crime charged and are inflammatory and prejudicial." *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990). "[E]ven language deemed prejudicial should not be stricken if evidence of the allegation is admissible and relevant to the charge." *Id.* This is an "exacting standard" and such motions are "rarely granted." *United States v. Coffey*, 361 F. Supp. 2d 102, 123 (E.D.N.Y. 2005).

#### 2. Application

Dr. Kleydman argues that the indictment includes irrelevant information about the dollar amount that she allegedly billed to Government health care programs for the destruction of inflamed and irritated SKs and skin tags. Accordingly, Dr. Kleydman asks the court to strike paragraph 16 of the indictment, which alleges that Dr. Kleydman "submitted and caused to be submitted approximately $1.8 million in claims to Medicare, Medicaid and other health care benefit programs for the destruction of inflamed and irritated seborrheic keratosis and skin tags." (Strike Mot. at 1 (quoting Indictment ¶ 16).) Dr. Kleydman asserts that "the only conceivable purpose of seeking to introduce the total dollar amount billed . . . is to shock the jury into finding guilt based on the billed amount alone." (Strike Mot. at 3.) However, paragraph 16 of the indictment is plainly relevant to the charge, because the core of the indictment is the allegation that Dr. Kleydman improperly submitted claims for reimbursement to

Medicare and other health care benefit programs for the destruction of inflamed and irritated SKs and skin tags. Furthermore, Dr. Kleydman has not demonstrated that paragraph 16 would be prejudicial to her, and she will be free at trial to present evidence that the loss total in paragraph 16 includes numerous procedures and diagnoses not relevant to the indictment. Accordingly, Dr. Kleydman's motion to strike is denied.

## IV. CONCLUSION

For the reasons stated above, Defendant's motions (Dkts. 34, 35, 37, 38) are DENIED.

SO ORDERED.

Dated:   Brooklyn, New York
         November 20, 2020

                                              /s/ Nicholas G. Garaufis
                                              NICHOLAS G. GARAUFIS
                                              United States District Judge